USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/29/08

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

UNITED STATES OF AMERICA

     - against -                         07 Cr. 958-01 (RWS)

DARYLL JENNINGS,                         SENTENCING OPINION
                    Defendant.

------------------------------------x
```

**Sweet, D.J.**

On February 6, 2008, Daryll Jennings ("Jennings" or "Defendant"), a convicted felon, pleaded guilty to one count of unlawful possession of a firearm which had previously been shipped and transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1). For the reasons set forth below, Jennings will be sentenced to 30 months' imprisonment and 3 years' supervised release. Jennings also will be required to pay a special assessment of $100.

**Prior Proceedings**

On October 2, 2007, Complaint 07 Mag 1091 was filed against Jennings in the Southern District of New York. Count I charged that on September 26, 2007, in the Southern District of New

1

York, Jennings, a convicted felon, unlawfully possessed a loaded Helwan 9 mm semi-automatic handgun which had previously been shipped and transported in interstate commerce, in violation of 18 U.S.C. § 922(g)(1).  Count II charged that on September 26, 2007, in the Southern District of New York, Jennings unlawfully possessed a loaded Helwan 9 mm semi-automatic handgun with an obliterated serial number, which had previously been shipped and transported in interstate commerce, in violation of 18 U.S.C. § 922(k).

On October 5, 2007, a Writ of Habeas Corpus Ad Prosequendum was obtained to writ Jennings from New York City custody to federal custody.

On February 6, 2008, before the Honorable Douglas F. Eaton, Jennings entered a plea of guilty to Count I.  The Court accepted Defendant's plea on February 7, 2008.

Defendant's sentencing is scheduled for April 29, 2008.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005),

2

the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

3

    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Jennings' personal and family history.

**The Offense Conduct**

The following description draws on the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

On September 26, 2007, an NYPD officer assigned to the Video Interactive Patrol Enhancement Response unit was monitoring the live surveillance video feeds transmitted from cameras mounted around the Bronx River Houses, a housing project located at 1609 East 174th Street, Bronx, NY.

4

At approximately 2:45 p.m., the officer observed an individual subsequently identified as Jennings and two other individuals as they entered the elevator of a building in the housing project, exited on the sixth floor, returned to the elevator five minutes later, and left the building.

The NYPD officer then observed Jennings and his two companions standing at the location of 1575 East 174th Street, Bronx, NY.  Jennings pulled a small plastic bag from the seat of his pants, selected a few pieces of what appeared to be crack cocaine from the bag, handed those pieces to an unidentified black male, and received what appeared to be U.S. currency in return.

The NYPD officer immediately gave a physical description of Jennings and the clothing Jennings was wearing to two other NYPD officers who were on patrol in the area in different unmarked vehicles near Boynton Avenue and East 172nd Street, Bronx, NY.

Shortly after the second NYPD officer (Officer-2) received the information, he saw Jennings near the intersection of 174th Street and Boynton Avenue.  When Officer-2's partner got out of the car to question Jennings, Jennings took a few steps back, turned around, and ran.  While Officer-2's partner chased after Jennings on foot, Officer-2 drove the patrol car northbound on

Boynton Avenue to catch up with Jennings.

After a brief chase, Officer-2 caught up with Jennings. When Officer-2 got out of his patrol car, Jennings stopped briefly and reached for a black object hidden in his front waistband. Officer-2 immediately tackled Jennings and placed him under arrest. The black object fell from Jennings' hand and landed about a foot away. The black object was a loaded Helwan 9 mm semi-automatic handgun with an obliterated manufacturer's name, but with an intact serial number. The firearm was not manufactured in the state of New York.

When another NYPD officer (Officer-3) was processing Jennings at the police station house, without any prompting or questioning, Jennings stated, in sum and substance that "you guys got me with the gun"; "the gun doesn't work right because the spring is loose"; "you can only fire a round at a time."

On September 27, 2007, Jennings made other incriminating statements to an NYPD detective at the precinct, including "The gun? Oh that, I found that, that don't even work because I tried it."

From reviewing Jennings' criminal record, the NYPD

6

officers determined that on October 5, 2006, in Niagara County Court, Jennings was convicted of the offense of Criminal Sale of a Controlled Substance in the Fifth Degree.

**The Relevant Statutory Provisions**

For Count I, the statutory sentence is up to 10 years' imprisonment, pursuant to 18 U.S.C. § 924(a)(2). Count I therefore constitutes a Class C felony, pursuant to 18 U.S.C. § 3559(a)(3). There is no applicable statutory minimum sentence. Pursuant to the provisions of 18 U.S.C. § 3553(f), the Defendant appears to meet the criteria for imposition of a sentence in accordance with the applicable guidelines.

The Court may also impose a term of supervised release up to three years, pursuant to 18 U.S.C. § 3583(b)(2).

The Defendant is eligible for a term of probation of no less than one but no more than five years, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine for Count I is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 per count, totaling $300, is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2007 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a).

The guideline for violation of 18 U.S.C. § 922(g)(1) is found in §2K2.1. Pursuant to §2K2.1(a)(4)(A), the base offense level is 20 because Jennings committed the instant offense subsequent to a conviction for the offense of criminal sale of a controlled substance, a Class D felony.

Defendant is entitled to a two-level decrease in his offense level for acceptance of responsibility under §3E1.1(a) and an addition one-level reduction for timely notifying the Government of his intention to enter a plea of guilty, pursuant to §3E1.1(b). Accordingly, the applicable offense level is 17.

On October 5, 2006, Jennings pleaded guilty and was sentenced to one year's imprisonment for Criminal Sale of a Controlled Substance in the Fifth Degree, resulting in two criminal history points. On September 7, 2006, Jennings pleaded guilty to Criminal Possession of a Controlled Substance in the Seventh

Degree, resulting in one criminal history point. Pursuant to §4.A1.1(e), two additional points are added because the instant offense was committed less than two years after Defendant was released from custody on May 25, 2007, for the sentence imposed on October 5, 2006. Jennings therefore has five criminal history points and a Criminal History Category of III.

Based on a total offense level of 17 and a Criminal History Category of III, the Guidelines range for imprisonment is 30 to 37 months.

The Guidelines range for a term of supervised release is at least two years, but not more than three years, pursuant to §5D1.2(a)(2).

Because the applicable guideline range is in Zone D of the Sentencing Table, the defendant is not eligible for probation, pursuant to §5B1.1, Application Note 2.

The fine range for the instant offense is from $5,000 to $50,000, pursuant to §5E1.2(c)(3). Subject to the Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release imposed, pursuant to § 5E1.2(d)(7). The most

9

recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,076.83 to be used for imprisonment, a monthly cost of $301.80 for supervision, and a monthly cost of $1,905.92 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Pursuant to all of the factors, it is hereby determined that a sentence within the Guidelines framework is warranted.

**The Sentence**

For the instant offense, Jennings will be sentenced to 30 months' imprisonment and a three-year term of supervised release.

Jennings is directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence a three-year term of supervised release. It is

10

recommended that Jennings be supervised by the district of his residence.

As mandatory conditions of his supervised release, Jennings shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions that:

(1) Defendant shall participate in a program approved by the United States Probation Office, which program may include testing to determine whether the Defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

(2) Defendant shall participate in a mental health program approved by the U.S. Probation Office. Defendant shall continue to take any prescribed medications unless otherwise instructed by the health care provider. Defendant shall contribute to the costs of services rendered not covered by third-party payment, if Defendant has the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

(3) Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived. A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for June 3, 2008.

It is so ordered.

New York, NY
May 28, 2008

ROBERT W. SWEET
U.S.D.J.